**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND**

STEVEN DIAS and
RAYMOND IGLE

Plaintiffs,

v. C.A. No. 04-379T

WAL-MART STORES, INC.

Defendant.

**WAL-MART STORES, INC.'S STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff Steven Dias is a former employee at the Wal-Mart store located in Newport, Rhode Island. Exit Interview Form attached as Exhibit 1.

2. Dias was hired to work at the Newport Wal-Mart on or about August 2001 and immediately took a position as an overnight stocker. Steven Dias Deposition Transcript ("Dias Dep. Tr.") at 10-11, attached as Exhibit 2.

3. Dias' formal performance evaluations indicated that Dias generally met the expectations of management, but had areas in which he needed to improve. Performance Evaluations attached as Exhibit 3.

4. For example, on his November 2001 performance evaluation, management specifically indicated that Dias needed to be "more aggressive" and more productive by increasing the number of boxes stocked per hour. Id.

5. Dias was never commended for exemplary work performance. Id.

6. In the November 2001 performance evaluation, Dias acknowledged his low productivity by indicating that he would "try to have more of a sense of urgency." Id.

7. Outside the formal performance evaluation process, Dias admits that management of the Newport Wal-Mart Store verbally informed Dias that they wanted him "to finish [his] area quicker." Dias Dep. Tr. at 28.

8. In December 2001, the Newport Store Manager, David Bandy, informed William Silva, the store's Assistant Manager assigned to the overnight stocking crew, that it was necessary to reduce the workforce on the overnight stocking crew after Christmas. William Silva Deposition Transcript ("Silva Dep. Tr.") at 22- 23, attached as Exhibit 4.

9. Bandy provided Silva with Reduction in Force Guidelines to help assist in the process of terminating the appropriate employees. Silva Dep. Tr. at 20-21.

10. According to the Reduction in Force Guidelines, employees should be terminated in the following order: (1) temporary employees; (2) employees with below standard evaluations; (3) employees disciplined for poor job performance; and (4) employees that had been with Wal-Mart for less than ninety (90) days.

11. Pursuant to the Reduction in Force Guidelines, Wal-Mart's ultimate goal was "to retain those Associates with the highest levels of performance."

12. Bandy instructed Silva to terminate temporary employees and then to use his discretion based on job performance. Silva Dep. Tr. at 22-23.

13. Silva instructed one of his support managers, Shawn Folger, to prepare a list of employees on the overnight stocking crew and to list their dates of hire. Silva Dep. Tr. at 76-77.

14. Upon review of the list, two temporary employees were selected for termination. Silva Dep. Tr. at 75-78.

15. Once the temporary employees were identified for termination, Silva met with Folger and the other support manager, Gus Toppa, to discuss which employees should be terminated based on poor productivity. Silva Dep. Tr. at 44.

16. The three managers, one of whom is African-American, unanimously agreed that Dias and his former co-plaintiff Raymond Igle should be terminated because of their low level of productivity compared to other employees on the overnight stocking crew. Id.

17. In his deposition, Igle admitted that he was not as productive as the other employees that were retained. Raymond Igle Deposition Transcript at 60-61, attached as Exhibit 5.

18. Silva acknowledged that he did not review any personnel files when deciding who to terminate, and instead, relied on his own experiences working with the members of the overnight stocking crew. Silva Dep. Tr. at 24, 42-43, and 46.

19. In total, eight employees were terminated from the overnight stocking crew during December 2002, thereby reducing the number of employees on the overnight stocking crew from 33 to 25. Affidavit of Alan Centazzo ("Centazzo Aff.") ¶ 4b.

20. Of the eight employees that were terminated in December 2002, four were black, three were white, and one was Hispanic. Centazzo Aff. ¶ 4c.

21. Of the 25 employees remaining on the overnight stocking crew as of January 1, 2003, 13 were black, 10 were white, and two were Asian-American. Centazzo Aff. ¶ 4d.

22. Of the 25 employees that were retained on the overnight stocking crew, 14 had less seniority than Dias. Centazzo Aff. ¶ 4e.

23. Of the 14 employees that were retained on the overnight stocking crew with less seniority than Dias, nine were black, four were white and one was Asian-American. Centazzo Aff. ¶ 4f.

Dated: Providence, Rhode Island
July15, 2005

Respectfully submitted,

Defendant
WAL-MART STORES, INC.
By its attorneys,

GEOFFREY W. MILLSOM (#6483)
MICHAEL D. CHITTICK (#5967)
JAIME J. LAPORTE (#6668)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 751-0604

CERTIFICATE OF SERVICE

I hereby certify that I am over 18 years of age and not a party to this action. On July 15, 2005, I caused the foregoing Statement of Undisputed Facts to be served by first class mail, postage prepaid, upon the following:

Robert M. Novack, Esq.
Clarkin, Galvin, Lowenstein & Novack
Post Office Box 267
84 North Main Street
Fall River, MA 02720

*335306_1.doc*