UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND.

STEVEN DIAS, Plaintiff

V. C.A. 04-379T

WAL-MART STORES, INC. d/b/a WAL-MART

**PLAINTIFF STEVEN DIAS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TRAVEL OF THE CASE

The instant action was filed by Plaintiffs Steven Dias and Raymond Igle, both former black employees of the Defendant's Newport Store, alleging that they were both laid off around Christmas of 2002 in a racially discriminatory manner in violation of both the Rhode Island Fair Employment Practices Act and Title VII. The gravamen of the plaintiffs' claims were that the Defendant had a policy of laying off by seniority and that policy was unlawfully violated when the Defendant laid them off and retained white workers with less seniority.

At the commencement of the discovery phase, the Plaintiff asked Wal-Mart to identify the members of the plaintiffs' department that were laid off and retained in the Christmas 2002 layoff. Wal-Mart responded by producing a chart which it indicated contained the information. Additionally, the Plaintiffs requested the Defendant to produce the work evaluations of all of the members of the Plaintiffs' department. This

request was objected to by the Defendant. Following a summary judgment conference with the court, the case was referred to Berry Mitchell in ADR and the deadlines were extended for one month. Action to compel was held in abeyance pending the completion of mediation.

At a conference held with Mr. Mitchell, the claims of Raymond Igle were settled and the claims of Steven Dias were unable to be resolved. Immediately after the mediation a discovery conference was held with the attorney representing the Defendant relative to whether or not the Defendant would voluntarily produce a the list of the persons laid off and retained as well as their written evaluations. Plainitff's counsel was informed Defendant's counsel that he would get back to counsel in a few days. A response has not to date been received. Rather, a motion for summary judgment was served. In addition to opposing this motion on the basis of factual information already discovered, the Plaintiff has filed a motion to compel relative to the information previously requested and therefore also opposes this motion pursuant to Fed. R. Civ. P. R. 56(f).

## INTRODUCTION

In the instant case, the Plaintiff alleges that he was discriminated against due to his race when he was laid off at Christmas 2002 when white employees with less seniority were retained. Although Wal-Mart has alleged a non-discriminatory basis for their 2002 lay off based on "job performance", and that eight employees of the overnight stocking crew, both whites and blacks were laid off, the evidence adduced indicates that the reasons proffered by the Defendant were not true. The evidence indicates that Wal-

Mart does have a reduction in force policy based on seniority and that policy was violated. Moreover, by Wal-Marts' own records, the only permanent employees laid off were two blacks with more seniority than five white employees.

The Plaintiff clearly meets his burden of a prima facie showing of discrimination. It is uncontested that he is black, a member of a suspect class, was qualified to do the job based on his performance evaluation and was terminated. Conversely, there is a material question of fact as to whether the Defendant then meets its burden to annunciate a bona fide business reason for the termination. Although the Defendant claims that the Plaintiff was laid off due to poor job performance, the assessment of that performance was made by a white manager who admittedly did not look at the Plaintiff's written performance evaluations, did not take or maintain any subjective measurement of the Plaintiff's performance and ignored his store manager's orders to lay off by seniority.

Even if the Defendant does meet its burden to proffer a bona fide business reason for the termination, there is ample evidence for a jury to infer discrimination. The Plaintiff has testified as to disparate treatment of blacks by the store management. Moreover, a strong inference of discrimination can be drawn by William Silva's completely inconsistent testimony as to what standards he followed in executing the lay off.

# PLAINTIFF'S OBJECTION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

The Plaintiff answers and objects to the Defendant's Statement of Undisputed Facts as follows:

1. Admitted.
2. Admitted.
3. Dias' had two performance evaluations for the time that he worked at Wal-Mart. In the first evaluation, conducted in 2001, the Defendant is correct that the evaluation, although generally, did indicate that Dias needed to be "more aggressive." His later evaluation, however, conducted in 2002, did not contain any mention of deficiencies in work. (Exhibit 1).
4. See answer to 3.
5. Admitted.
6. See answer to 3.
7. Admitted but see answer to 3.
8. William Silva only began working in the Newport Store approximately six months before the December 2002 layoffs. (Silva dep at 24)(Exhibit 2). The Plaintiff will admit that the statement is true if the year is "2002."
9. Silva has testified inconsistently about the criteria that he was instructed to employ in making lay offs. At pages 64-65 of his deposition (Exhibit 2), Silva testified that the store manger, Bandy, gave him a copy of the Wal-Mart Reduction in Force Policy (Exhibit 3) and told him to follow it. Previously in his deposition, he testifies that Bandy told him to lay off the temps and then to use his

evaluations who have not improved; 3) employees who were on "coaching" (a probationary period for unsatisfactory workers, 4) permanent employees with less than 90 days service and; 5) by seniority.

11. This allegation is not correct. As the documents itself states quite clearly, the "goal of retaining associates with the highest level of performance applies only to those associates currently under coaching or those who have maintained a high level of job performance. (Exhibit 3.) As Silva testified that he never reviewed either the evaluations or checked to see if any employee was subject to coaching, he indicated that he first laid off temp employees and then laid off solely by seniority.(Silva dep 46-47, 79)

12. Denied. See answers 9, 10 and 11.

13. Admitted.

14. Admitted.

15. Silva testified that he discussed the lay offs with his two cohorts, Toppa and Folger but there is no mention of determining productivity. (Silva dep. 44).

16. There is no evidence indicating that Toppa and Folger "unanimously agreed" on who should be laid off. (Silva dep. 44) The only evidence is that Silva discussed the issue with the two. Id.

17. This is an unfair characterization of the testimony. Igle had testified that others worked faster than he did because his work was scattered all over the store (Igle dep at 60-61). Accordingly, when he took merchandise off the pallet to put on the shelves, he had farther to walk than the others.

18. Admitted. Silva also testified that he kept no objective records of performance and made decisions based on his "impression" of the worker. (Silva dep. 63).

19. This is a misleading statement by the Defendant. Records produced by the Defendant clearly indicate that the only permanent employees laid off in the Christmas 2002 lay off were Steven Dias and Raymond Igle. (Exhibit 4) From exhibit 4, produced by Wal-Mart, it can be clearly seen that Rodney Moniz and Robert Eberhard, both white, were temp employees and were laid off because their "assignment was complete." The other employees terminated in December of 2002 were not laid off but fired for misconduct. Norman Brazier (excessive absences); Robert Bryant (unreported absences); Joseph McGee (temp) (excessive absences); Diane Senerchia (gross misconduct); Alexander Garcia (Gross misconduct). Only Dias and Igle, both black, were the only employees laid off at the Christmas lay off. Five white employees with less seniority than Dias were retained.

20. See answer 19.

21. Admitted.

22. Admitted.

23. Admitted.

## STATEMENT OF FACTS

The Plaintiff joined the overnight stocking crew at the Defendant's store on August 29, 2001. (Exhibit 4). His performance evaluations, both for 2001 and 2002 indicated that he met the employer's expectations. (Exhibit 1). Although the 2001 evaluation indicated that he needed to be more aggressive and work more boxes per hour, this supposed deficiency did not cause him to be laid off after Christmas 2001 and moreover was corrected as can be seen in his 2002 evaluation. *Id.*

William Silva, the Assistant Store Manager, testified that about two weeks before Christmas of 2002, he was instructed by the Store Manger Bandy to lay off people from the overnight stocking crew. (Silva dep. At 21-22). Silva had only been at the store for about six months and this was his first Wal-Mart lay off. *Id.* At 24. Silva then goes on to testify inconsistently and change his story as to what criteria he was told to use in making the lay offs. He first indicates that the store manager told him to lay off the temporary employees and then to "use his discretion to keep the performers that were good workers." *Id. At 22.* He later testified that Bandy gave him a copy of the Wal-Mart reduction in force policy and instructed him to follow it. *Id. At 64.* (Exhibit 3). Contrary to his earlier testimony, Silva alleged that he in fact did follow the RDF guideline. *Id. At 65.* When questioned more specifically relative to the RDF guideline

performances. He testified that the only measure of productivity of the overnight stocking crew's productivity was a nightly chart that detailed how many pallets were cleared in each department. *Id. At 29.* He then admitted that some employees' pallets were easier to do than others. *Id. At 32.* Moreover, often pallets couldn't be unloaded because of no room on the shelves. When that happened the employee would leave his area and help another unload their pallets. *Id at.37-40.* Accordingly, Silva admitted that his records didn't show the productivity of an employee. *Id.* It is clear that Silva, the person charged by Wal-Mart to select those for lay off, cannot consistently articulate a good faith business reason for Dias' termination.

In addition to Wal-Mart's failure to articulate a good faith business reason for the termination, there instances described by the Plaintiff of disparate treatment by the store. treatment against blacks at the Defendant. He testifies that he was treated differently in being made to provide a medical excuse for an absence. *Id. At Not being allowed to bring black movies into work, Id* About being given more work to do than whites. *Id. At 69.* Accordingly, there is ample reason that a fact finder could infer racial animas .

## ISSUES

1. Whether the Defendant has articulated a good faith business reason for laying off the Plaintiffs.

2. Even if the Defendant has articulated a good faith business justification, was the reason pretextual.

## POINTS AND AUTHORITIES

This case is brought under Title VII and the Rhode Island Fair Employment Practices Act. In evaluating each case for proof of discrimination, the Court will look to and apply the Supreme Court's recommended framework for discrimination cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) State law in Rhode Island also follows this framework. *Casey v. Town of Portsmouth,* ____A.2d.__ (2004); *Newport Shipyard, Inc. v.R.I. Comms'n Human Rights,* 484 A.2d 893 (1984). First, the plaintiff has the burden of proving by the preponderance of the evidence that he is a member of a protected class who suffered an adverse job action and was competent to do the job. Here, there is no question that the Plaintiff meets this burden and makes out a prima facie case based on the undisputed facts that 1) he is a member of a protected class; 2) he can demonstrate that he can perform the job by way of his satisfactory performance appraisals and 3) he suffered an adverse job action.

The burden then shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. The Defendant has not met

this burden. Although the burden to articulate a good faith business justification for the adverse employment action is not considered a heavy burden, it is nevertheless not an illusory burden. In *Chapman v. A1 Transport, 229 F.3d 1012, 1034 11th Cir. 2000)* cited with favor by the Rhode Island Supreme Court in *Casey, supra,* the court said that when business justifications involve subjective judgments that the court would "will accept a subjective reason only as long as the defendant articulates a ***clear and reasonably specific factual basis upon which it based its subjective opinion.***" (emphasis supplied) Here, Silva, the person charged by Wal-Mart to make the decisions relative to the lay offs, cannot even maintain a consistent factual basis within the framework of one deposition. He first claims he was told to use his discretion and retain the best workers. He then claims that his store manager gave him a written criteria to follow which mandates that permanent employees be laid off by seniority not productivity. Silva then claims, contrary to Wal-Marts own documentary evidence that the Plaintiff was laid off by seniority. He further admits that he did not follow the Store Managers and Wal-Mart Reduction in Force Policy by not considering employees' performance evaluations. Further, he admits that neither he nor Wal-Mart had any method of tracking an employee's productivity. Before deciding who to lay off Silva had available to him all of the employee's written performance evaluations but he didn't choose to look at them. The RDF guideline instructed him to review the personnel records to see if any of the employees were the subject of a "current coaching" but he didn't do that either. Rather, he based his decision on his personal impressions of the employees. Silva's admitted criteria are precisely the criteria that that *Chapman* and *Casey* courts have rejected as not meeting the burden of a articulating a legitimate business justification.

Even if the Court finds that the Defendants have articulated a "legitimate" reason for the firings, the Plaintiff can show that the reasons were pre-textual. To prove discrimination, the Plaintiffs need not produce the "smoking gun." *Resare v. Raytheon Co.,* 981 F.2d 32 (1st Cir. 1992). Accordingly, circumstantial evidence of discrimination can be sufficient to permit a fact finder to conclude that the reasons for the firings were pretextual where the Plaintiffs have a prima facie case and there is "the suspicion of mendacity" on the part of the Defendant. *St. Mary Honor Center v. Hicks,* 509 U.S. 502 (1993). Evidence that the fact finder may draw inferences from are the "general atmosphere of discrimination in the workplace" and the "attitudes of those in authority." Here, there are statements by the Plaintiff who will testify that William Silva treated the blacks differently than the whites in such things as approving days off and tardiness.

Additionally, a jury can infer discriminatory animus where a Defendant fails to follow its own polices. *Center for Behavioral Health v. Barros* 710 A.2d 680 (1998). Here, Silva totally disregarded Wal-Mart's RDF policy and substituted his personal impressions for making the decision on whom to lay off. From this fact and the fact that Silva's "criteria" was so subjective and that he refused to use the available objective criteria on performance, a jury could well conclude discriminatory animus.

## CONCLUSION

There are sufficient facts to permit a fact finder to infer that the Defendant discriminated against the Plaintiff and the motion for summary judgment should be denied.

The Plaintiff,
By his attorneys

Robert M. Novack, Esq.
Clarkin, Gauvin, Lowenstein & Novack
P.O Box 267
84 North Main St.
Fall River, MA 02720
Tel: 508-673-9191
Fax: 508-677-1803
RI Bar No. 3255

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I SERVED A TRUE COPY OF THE ABOVE DOCUMENT UPON EACH PARTY APPEARING PRO SE AND UPON COUNSEL OF RECORD FOR ALL OTHER PARTIES BY MAIL ON 7/22/05.

## CERTIFICATE OF SERVICE

I certify that I am a member of this Court and on this 22nd day of July 2005, I caused the foregoing copy of the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment and the Plaintiff's Motion to Compel Production to be served upon the Defendant by mailing copies by first class mail, postage prepaid to:

Geoffrey W. Millsom. Esq.
Adler Pollock & &Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903