UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND.

STEVEN DIAS, Plaintiff

V. C.A. 04-379T

WAL-MART STORES, INC. d/b/a WAL-MART

**PLAINTIFF STEVEN DIAS' OBJECTIONS MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## INTRODUCTION

The Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation in which he recommended granting the Defendant's Motion for Summary Judgment. The Plaintiff's objections to the report are three-fold. First, the Plainitiff contends that the court did not focus correctly in assessing whether the Defendant had met its burden required in step two of the McDonnell Douglas Corp. v. Green formulation. Secondly, he asserts that the court incorrectly concluded that neither the Defendant's failure to follow its own guidelines regarding layoffs nor the Plaintiff's personal experiences were sufficient to credibly make out an inference of discrimination. Lastly, the Plaintiff contends that his

## SPECIFIC OBJECTIONS

**There is a material issue of fact as to whether the Defendant me its burden under Step Two of the McDonnell Douglas Corp. v. Green formulation.**

In its report, the court correctly recounts the familiar burden shifting test espoused in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The second prong of the test requires the Defendant to articulate a legitimate, non-discriminatory reason for laying-off the Plaintiff. Although the burden to articulate a good faith business justification for the adverse employment action is not considered a heavy burden, it is nevertheless not an illusory burden. In *Chapman v. A1 Transport, 229 F.3d 1012, 1034 11th Cir. 2000)* cited with favor by the Rhode Island Supreme Court in *Casey, supra,* the court said that when business justifications involve subjective judgments that the court would "will accept a subjective reason only as long as the defendant articulates a ***clear and reasonably specific factual basis upon which it based its subjective opinion.***" (emphasis supplied).

In its report, the court asserts that the Defendant has met this burden by articulating two reasons: a post-Christmas need to reduce staff and the Plaintiff's low productivity. By focusing on the "post-Christmas need to reduce staff", the court misconstrues the issue. There was no question that the Defendant had a practice of laying off staff after each Christmas. The issue at hand, however, was, given that there would be layoffs, was a racially neutral criteria used in selected those who were laid off? William Silva, the manager who selected Dias for layoff was given two weeks by Store

Manager Bandy to make the Christmas 2002 layoffs. (Silva Dep.21-22). The Defendant by way of affidavit of Centazzo, indicates that 8 employees were terminated in December of 2002. (4 Blacks, 3 Whites, 1 Hispanic). Examining the Defendant's list of employees (Plaintiff's exhibit 4), the three whites (Eberhard, Moniz and McGee) were all temporary employees (less than 90 days) as all were hired in November of 2002 and the Hispanic was terminated for gross misconduct. The four black employees Dias, Igle, Bryant and Brazier were all terminated for either lack of work (Dias and Igle) or attendance problems (Bryant and Brazier). Accordingly, the proper question to be answered is whether the Defendant has articulated racially neutral criteria that was used to lay off these eight. Again, turning to the Defendant's list of terminated employees, the Defendant indicates that the only employees laid off for lack of work were Plaintiff Dias and former Plaintiff Igle. The remaining six terminees were let go either for disciplinary reasons or because they were temporary and their "assignments were complete." (Plaintiff's Ex. 4).

Assuming arguendo that after all the terminations for cause that occurred in December, the Defendant still had to lay off two more employees, the central question is whether it articulated a good faith non-discriminatory reason for laying off Dias (and Igle.) The evidence is compelling that William Silva, the person making the layoffs, was unable to articulate a consistent reason for the layoffs. First, Silva testified that the store manager told him to lay off the temps and then use his discretion to keep the good workers." (Silva dep.at 22). When questioned as to what criteria he used to assess good workers he replied "the company standards, pieces per minute and attendance." (Silva dep. At 23). A few minutes later, Silva admits that Wal-Mart did not have "time standards." (Siva Dep. At 31). He then indicates that he kept track of an employee's

performance by the number of pallets "killed"(completed) each night. (Silva dep 41-43). Later in his deposition Silva admits that the pallet counts did not reflect the productivity of a worker because often one employee would help another and some pallets couldn't be unloaded because the shelves were all fully stocked. (Silva's dep. 39-43). At the end of his deposition, he completely contradicts his prior testimony that the store manager told him to "use his discretion to keep the good workers" and testifies rather that the store manager gave him Wal-Mart's Reduction in Force Guideline (Plainitff's exhibit 4) and ordered him to follow it. (Silva dep. At 64). A simple review of this guideline makes it clear that Silva was to follow a set formula in layoffs and had no discretion. Lastly, after acknowledging that he first laid off the temps, he then avers that "all the other layoffs were made on a seniority basis." [1] (Silva dep. at 79).

The Magistrate Judge concludes that Silva's observations of the Plainitff's work, though subjective were legally sufficient. (Op. at 11-12). That conclusion may have been correct had Silva maintained consistently that the criteria was, in fact, to assess workers by observation and keep mental notes of their production. Here, Silva has articulated at different times, different and mutually exclusive criteria that he used to lay off the Plaintiff. It appears abundantly clear that Silva, the only Defense witness proffered by the Defendant, has not articulated on behalf of Wal-Mart "a ***clear and reasonably specific factual basis upon which it based its subjective opinion.*** It should be for the fact finder to decide after hearing these inconsistencies in Silva's testimony whether or not there was any non-discriminatory basis for the layoffs. There is a point where even the employer's limited burden under McDonnell-Douglas has not been met.

[1] The assertion that layoffs were done by seniority is denied by Wal-Mart. The records at Exhibit 4 indicate that five whites with less seniority than Dias were retained. (Mercer, Newbert, Sanders, Toppa and Webster)

To hold that the Defendant has met its burden in the case at bar when it can't even articulate a consistent reason, renders the employer's burden meaningless.

**Notwithstanding whether or not the Defendant met its burden under Step Two of McDonnell-Douglas, the Plaintiff has produced sufficient evidence to raise an inference of racial discrimination.**

Even if the Court finds that the Defendants have articulated a "legitimate" reason for the layoffs, the Plaintiff has produced sufficient evidence whereby a fact-finder could infer that the reasons were pre-textual. To prove discrimination, the Plaintiffs need not produce the "smoking gun." *Resare v. Raytheon Co.,* 981 F.2d 32 (1st Cir. 1992). Accordingly, circumstantial evidence of discrimination can be sufficient to permit a fact finder to conclude that the reasons for the firings were pretextual where the Plaintiffs have a prima facie case and there is "the suspicion of mendacity" on the part of the Defendant. *St. Mary Honor Center v. Hicks,* 509 U.S. 502 (1993). Evidence that the fact finder may draw inferences from are the "general atmosphere of discrimination in the workplace" and the "attitudes of those in authority."

A fact-finder can infer discriminatory animus where a Defendant fails to follow its own polices. *Center for Behavioral Health v. Barros* 710 A.2d 680 (1998). Here, the Magistrate Judge accurately tracks Silva's acts in laying off the Plaintiff and has no difficulty concluding that "Silva did not comply with the Defendant's Guidelines." (Op. at 9). The Magistrate Judge then concludes that this failure is not sufficient to raise an inference of pre-text. (Id.).The court appears to base this conclusion on what he indicates is the "bigger picture" that blacks as well as whites with less seniority than the Plaintiff were retained and the overall racial composition of the crew changed little. (Op. at 10).

The Plaintiff respectfully suggests that this view misses the point. The true focus should be on whether there was a race neutral criteria used in laying off Dias (and Igle). Assume arguendo that the original crew consisted of 90 blacks and 10 whites where all of the whites had less seniority than 50 of the blacks. If the employer were then to lay off two blacks with more seniority than 50 of the blacks, just because he disliked blacks, would the Defendant be entitled to defend a charge of discrimination because the employer retained 50 blacks with less seniority and that racial percentages changed little. Rather, the true issue is as follows: Given the need to layoff two employees was the criteria used to select the terminees non-discriminatory. Under Barros, supra, it should be for the fact-finder to decide whether the Defendant's failure to follow its own rules in layoffs infers racial animus.

**The Plaintiff has raised sufficient evidence to allow a fact-finder to infer a general atmosphere of discrimination in the workplace.**

In his deposition, the Plaintiff recounts numerous instances where he believed that black employees were treated differently than white employees. The Magistrate Judge rejects these allegations for lack of support by competent evidence or that do not rise to the severity of a hostile workplace. Taken as a whole, the Plaintiff did testify to discriminatory treatment of blacks at the store. Specifically, he stated that when a black employee asked manager Bill (Silva) to get a holiday off he was told no when a white employee who asked after was given the holiday. (Dias Dep. at 52-53)[2] Additionally, Dias testified that blacks were asked to confirm sickness on sick days where whites were not. (Dias dep at 54). Further he gives specifics as to a white employee "Timmy" being

[2] The Magistrate Judge included the entire deposition of Dias into the record.

allowed to take whatever time off he wanted, where a black employee Dondee was threatened with termination for taking time off without a sick note. (Dias dep. at 55). Additionally, Dias recounts how white employees could refuse to do work and use the company phone on duty where blacks had to toe the mark. (Dias dep at 61-62). Dias further testifies that he observed black employees being ridden to do more work than the whites. (Dias dep at 63). It should be left to the fact-finder, after observing the Plaintiff's testimony, to conclude whether or not these incidents that he recounts rise to the level of a hostile workplace. The Plaintiff should not be deprived of an inference of racial bias simply because he has not caught the employer on tape or in writing with discriminatory remarks.

**CONCLUSION**

By failing to articulate a consistent non-discriminatory reason for the Plaintiff's layoff, the Defendant has not met its limited burden under the McDonnell-Douglas framework. Additionally, the Defendant's failure to follow its won guidelines for layoffs and the Plaintiff's personal experiences of disparate treatment are sufficient to raise an inference of racial animus. Therefore the District Court should reject the Magistrate Judge's proposed findings and order.

The Plaintiff,
By his attorneys

Robert M. Novack, Esq.
Clarkin, Gauvin, Lowenstein & Novack
P.O Box 267
84 North Main St.
Fall River, MA 02720
Tel: 508-673-9191
Fax: 508-677-1803
RI Bar No. 3255