UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STEVEN DIAS                          :
                                     :
        v.                           :    C.A. No. 04-379T
                                     :
WAL-MART STORES, INC.                :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before this Court is Defendant's Motion for Summary Judgment (Document No. 18) pursuant to Fed. R. Civ. P. 56. In his Complaint, Plaintiff Steven Dias ("Plaintiff") alleges two statutory counts of employment discrimination based on his race, African-American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1 et seq.[1]

Defendant filed its Motion for Summary Judgment and Memorandum of Law (Document No. 18) on July 15, 2005. Plaintiff objected to Defendant's Motion and filed his Opposition and Memorandum of Law (Document No. 22) on July 25, 2005. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local R. 32(c). A hearing was held on September 14, 2005. After reviewing the Memoranda submitted,

---

[1] Plaintiff Raymond Ingle, Dias' former co-worker at Wal-Mart, resolved his discrimination claim against Wal-Mart at a mediation conference held on July 1, 2005.

listening to the arguments of counsel and conducting my own independent research, I recommend that Defendant's Motion for Summary Judgment be GRANTED.

## Statement of Facts

Plaintiff is an African-American male, and a former employee of Defendant's Newport store. Plaintiff was hired to work at the Newport store in August of 2001 as an overnight stocker. Plaintiff had two written appraisals of his job performance while employed by Defendant. The first, dated November 14, 2001, rated Plaintiff as "meets expectations" but noted that he needed to be "more aggressive" and more productive regarding "boxes per hour." Plaintiff signed the appraisal and responded that "[he'll] try to have more of a sense of urgency." The second, dated July 24, 2002, also rated Plaintiff as "meets expectations" and the only area for improvement noted was that he continue to learn about other areas and departments of the store. Plaintiff admits that he was never commended for "exemplary" work performance by Defendant and that he was verbally advised on one occasion by one of Defendant's support managers that "they would like [him] to finish [his] area quicker...." Dias Dep. at p. 28.

In December of 2002, William Silva ("Silva"), Defendant's Assistant Store Manager, was advised by the Store Manager that he needed to reduce the size of the overnight stocking crew after Christmas. Silva Dep. at pp. 22-23. Silva was a relatively new manager and had never before been asked to implement a layoff for Defendant. Silva Dep. at p. 21.

Defendant has written Reduction of Workforce Guidelines (the "Guidelines") which were provided to Silva by his Store Manager for Silva's use in implementing the Christmas 2002 layoff. Silva Dep. at p. 64. Although the parties provide conflicting descriptions of the Guidelines, the

-2-

Guidelines are unambiguous and speak for themselves. The Guidelines identify four sequential steps in implementing a reduction of workforce. First, release temporary employees[2]; second, terminate employees with current below-standard evaluations who have not improved their performance to meet expectations; third, terminate employees with a current coaching relating to job performance who have not improved their performance to meet expectations; and finally, terminate employees who have been employed less than ninety days (last in/first out).

Following Christmas 2002, Plaintiff's employment was terminated by Defendant. Plaintiff was one of eight employees terminated around that time. Defendant contends that Plaintiff was terminated as part of an effort to reduce the size of the overnight stocking crew. Although Plaintiff disputes that all eight employees were terminated for the same reason, it is undisputed that the overnight stocking crew was reduced from thirty-three to twenty-five employees during December 2002. It is also undisputed that of the eight employees terminated around that time, four were African-American, three were Caucasian and one was Hispanic. Finally, of the twenty-five employees remaining on the overnight stocking crew after January 1, 2003, it is undisputed that thirteen were African-American, ten were Caucasian and two were Asian-American.

### Summary Judgment Standard

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[2] The Guidelines use the term "associates." However, this Court will substitute the term "employees" for purposes of clarity.

of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great

Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

## Analysis

### A.   The Parties' Positions

Plaintiff asserts that he was discriminated against due to his race when he was laid off by Defendant in December 2002. Plaintiff argues that Defendant had a policy of laying off by seniority and committed race discrimination when it laid him off (and laid off his former co-Plaintiff, Mr. Ingle) and retained less senior Caucasian employees in violation of such policy.

Plaintiff also attempts to oppose Defendant's Motion pursuant to Rule 56(f), Fed. R. Civ. P., and because he moved to compel production of documents on July 25, 2005. (Document No. 21). Plaintiff, however, has failed to comply with the specific requirements of Rule 56(f). A party who seeks the protection of Rule 56(f) must state by affidavit the specific reasons why he is unable to present the necessary opposing evidence. Other than briefly mentioning Rule 56(f) in his Opposition, Plaintiff has not complied with its particular requirements. As to the Motion to Compel, Plaintiff withdrew the Motion on August 1, 2005, according to the docket, presumably due to compliance by Defendant. Since that date, Plaintiff has not formally moved under Rule 56(f) for a continuance or otherwise moved to supplement his Opposition or the record before this Court with any documents obtained from Defendant. Plaintiff has not established any basis for relief under Rule 56(f) or grounds for a continuance.

Defendant responds that Plaintiff's employment was lawfully terminated in a race-neutral reduction in force and that Plaintiff was included in the reduction due to his low productivity compared with his fellow stockers. Defendant argues that Plaintiff cannot establish either a prima facie case of race discrimination or that Defendant's reduction in force was a pretext for race discrimination. Thus, Defendant argues that it is entitled to summary judgment. For the reasons discussed below, this Court agrees and recommends that the District Court GRANT Defendant's Motion for Summary Judgment.

**B.     Title VII**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer...to discharge any individual, or otherwise to discriminate against any individual with respect to his...employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1).[3] In this case, Plaintiff does not rely on direct evidence of discrimination or a so-called "smoking gun." Thus, Plaintiff's proof of a Title VII violation is evaluated pursuant to the familiar three-step, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). The First Circuit has thoroughly outlined this framework as follows:

---

[3] The same analysis applies to both discrimination counts contained in Plaintiff's Complaint. See Russell v. Enter. Rent-A-Car Co., 160 F. Supp. 2d 239, 265 (D.R.I. 2001) ("FEPA is Rhode Island's analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to those brought under FEPA.") (citations omitted). Therefore, this Court will generally refer to Title VII in its analysis, but the analysis will apply as to all Plaintiff's claims under FEPA.

> [STEP ONE] [T]he plaintiff shoulders the initial burden of adducing a prima facie case of unlawful discrimination. This includes a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him; (3) plaintiff was qualified for the employment he held; and (4) plaintiff's position remained open or was filled by a person whose qualifications were similar to his. Establishment of a prima facie case creates a presumption of unlawful discrimination.
>
> [STEP TWO]  Once a plaintiff establishes a prima facie case, the burden [of production, not persuasion,] shifts to the employer to rebut this presumption by articulating a legitimate, non-discriminatory reason for its adverse employment action.
>
> [STEP THREE]  In the third and final stage, the burden devolves upon the plaintiff to prove that the reasons advanced by the defendant-employer constitute mere pretext for unlawful discrimination. To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race....

Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996) (citations and footnote omitted).

For purposes of deciding this Motion, the Court presumes that Plaintiff has proffered sufficient evidence to avert summary judgment on his *prima facie* case of race discrimination. The Court further finds, based on the evidence discussed below in connection with pretext, that Defendant has met its limited burden of articulating a legitimate, non-discriminatory reason for laying off Plaintiff, i.e., his low productivity and its post-Christmas need to reduce the stocking crew. Thus, the primary issue before the Court is whether Plaintiff has adduced sufficient evidence to support a rational finding that Defendant's articulated reason for his layoff was a pretext *and* that its real reason for terminating Plaintiff's employment was his race. See Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998). "Put another way, [Plaintiff] cannot avert summary judgment

-7-

if the record is devoid of adequate direct or circumstantial evidence of intentional racial...discrimination on the part of Wal-Mart." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19-20 (1st Cir. 1999). Plaintiff has not done so.

### 1. Evidence Concerning the Guidelines

Plaintiff's primary argument (the "gravemen" of his case as stated in his Memorandum in Opposition) is that Defendant "unlawfully violated" its own Guidelines when it laid him off and retained less senior Caucasian employees. Plaintiff misstates Defendant's layoff policy. Although seniority is one factor to be considered, it is the last step in the process. The two steps preceding seniority take current job performance into consideration. The Guidelines state that Defendant's goal "is to retain those [employees] with the highest levels of performance."

Although Silva testified at one point that he followed the Guidelines in implementing the reduction in force, there is a genuine issue of fact as to whether he, in fact, did so. Silva testified that he "tried to follow [the Guidelines] as much as [he] could." Silva Dep. at p. 65. Silva also testified that his Store Manager instructed him to first lay off the temporary Christmas help and then "it was at my discretion to keep the performers that were good workers." Silva Dep. at p. 21.

In exercising his "discretion," Silva testified that he applied two factors – pallet production or pieces per hour, and attendance. Silva Dep. at p. 23. Silva stated that he did not review any attendance records in implementing the layoff and that he had no recollection whether Plaintiff had an attendance problem. Silva Dep. at pp. 57-60. Silva testified, however, that "productivity would be more important." Id. at 60.

-8-

As to productivity, Silva did not review prior employee performance appraisals or personnel files to determine if an employee had any "current coaching" or pending disciplinary action. Silva Dep. at pp. 45-47, 72. Rather, it is apparent from his testimony that he did what he was instructed to do by his Store Manager. He exercised, in consultation with his two support managers,[4] his discretion to keep the best performers. Id. at 21. Silva testified that he had a general mental impression as to productivity and "came up with the people that were the non-performers that we would have to layoff." Id. at 62.

The discretionary and subjective process followed by Silva simply did not comply with Defendant's Guidelines. As previously noted, the Guidelines provided for a specific four-step sequential process that involved the review of performance evaluations at step two and disciplinary records at step three. Silva did neither. Furthermore, Silva did not consider seniority as required at step four. He simply exercised his subjective "discretion" to retain the best performers in his opinion as instructed by his store manager. Silva Dep. at p. 21.

Thus, the issue presented is whether evidence of a violation of Defendant's Guidelines creates a genuine trialworthy issue as to pretext. Although such evidence can preclude summary judgment in the employment discrimination context, it does not in this case when the evidence is viewed in its entirety, and in a light most favorable to Plaintiff.

Plaintiff has offered no evidence to suggest that Silva was being untruthful when he testified that Plaintiff was not, in the collective opinion of himself and his support managers, as productive

---

[4] It is undisputed that one of these support managers involved in the decision-making process is African-American. See ¶ 16 of Plaintiff's Objection to Undisputed Facts.

as the retained stockers. In fact, Silva's predecessor shared the same view when he noted boxes per hour, i.e., productivity, as an area for improvement on Plaintiff's 2001 performance appraisal. Plaintiff himself testified that one of Silva's support managers, Gus Toppa, counselled him "to finish [his] area quicker." Silva Dep. at p. 28. As instructed by the First Circuit, "[c]ourts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991). The issue before this Court is whether Plaintiff has proffered sufficient evidence to support a finding of intentional race discrimination. Plaintiff has not done so.

While Plaintiff narrowly focuses his argument on seniority and the lack of compliance with the Guidelines, he ignores the bigger picture. It is undisputed that as of January 1, 2003, thirteen African-American employees (out of twenty-five total) remained on the overnight stocking crew. See Aff. of Alan Centazzo at ¶ 4d. After the reductions, the percentage of African-American employees on the overnight stocking crew remained at 52%, and the overall percentage of minority employees dropped negligibly from 61% to 60%. Id. at ¶ 4. Although Plaintiff is correct that he was laid off at the same time four less senior Caucasian employees were retained, he ignores that nine African-American employees with less seniority than him were also retained by Defendant after his layoff. Id. at ¶ 4f. Moreover, during calendar year 2002, out of a total of fifty employees who worked on the stocking crew, twenty-six were African-American and thirty were minority employees. Id. Under the specific circumstances of this case, such "bigger picture" evidence warrants the entry of summary judgment in Defendant's favor. See Lewis v. City of Boston, 321 F.3d 207, 215 (1st Cir. 2003) (summary judgment for employer in race discrimination case affirmed,

in part, due to evidence that plaintiff's three African-American co-workers were retained after layoff) and Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 385 (1st Cir. 2000) (summary judgment for employer in age discrimination case affirmed, in part, due to evidence that four of the five employees retained after layoff were over forty and one was the same age (fifty-five) as plaintiff).

Plaintiff contends that Silva's subjective opinion as to his productivity is not factually supported and thus summary judgment is precluded. "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000). See also Burdine, 450 U.S. at 258.

Defendant has shown a sufficient factual basis for Silva's subjective assessment of Plaintiff's work performance. Silva testified that he worked the "overnight" shift for six months and that the evaluation of stockers was "an ongoing process." Silva Dep. at p. 24. Silva testified as to the importance of productivity and that "the first question that the store manager would ask is how many pallets of freight were killed that night." Id. at 42. Silva stated that he and the support managers tracked pallet productivity with a "rough count." Id. at 29-32. He also indicated that they took pieces per pallet into consideration. Id. at 30-31. In other words, the fact that it would take longer for an employee to break down a pallet containing smaller pieces such as health and beauty aids. Id. at 30-31. Finally, Silva testified as to other special circumstances taken into consideration in evaluating productivity. For instance, a stocker's inability to "kill" or finish emptying an entire pallet because the shelves became full, and stockers who helped others with their pallets or received

-11-

such help. Id. at 37-38, 41. Silva presented a sufficiently "clear and reasonably specific" factual basis for his assessment of Plaintiff's productivity.

### 2. Evidence Concerning the Work Atmosphere

Plaintiff also argues that summary judgment is precluded because there was a "general atmosphere of discrimination in the workplace." However, his evidence simply does not hold water. Even if Plaintiff's allegations were supported by competent evidence, these claimed incidents are not sufficiently severe or pervasive to make out an actionable "hostile work environment" claim or reasonably support an inference of intentional race discrimination. See Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16-17 (1st Cir. 1999). Plaintiff asserts that minorities were assigned more work than non-minorities but he offers nothing more than his unsupported perception. Dias Dep. at p. 69. He speculates that he was asked to bring in a medical excuse for an absence to "push his button" but offers no competent evidence that only minority employees were asked to provide such documentation or that the incident was used in disciplining him or selecting him for layoff. Id. at 59-60. Plaintiff further contends that his claim is supported by the fact that Defendant banned, in Plaintiff's words, "black movies" and "gangster rap" music from the workplace based on the complaint of a female Caucasian co-worker. However, Plaintiff conceded that the movies were "gangster rap" which included profanity, scenes of drug use and "pimping" and instances of where a man would "degrade a woman." Id. at 45-47. Additionally, Plaintiff conceded that the music in dispute contained profanity and "talking about doing things to women." Id. at 49. Finally, it is undisputed that all types of music and the claimed "offensive-type" movies were prohibited at least for a period of time. Id. at 50.

Defendant's actions were race neutral, Dias Dep. at p. 50, and potentially could even have been required by Title VII as a corrective action in response to a co-worker's hostile work environment complaint. Defendant was well within its rights – if not within its obligation – as an employer to restrict music and movies from the workplace that included profanity and language or scenes degrading females. Plaintiff asserts that it was "not right" for Defendant to restrict movies in the workplace admittedly containing "offensive language" based on the complaint of a single co-worker because watching them had become the "norm" for the group. Dias Dep. at p. 46. Plaintiff's argument is simply wrong and uninformed as to an employer's legal duty to reasonably respond to legitimate complaints of a hostile work environment even if there is only a single employee complaining. While Plaintiff had the right to enjoy any type of movies and music while not at work, he did not have the right to do so in the workplace as to movies and music others may reasonably find offensive. In fact, Defendant had the right to unilaterally ban all types of movies or music in the workplace for any non-discriminatory reason.

Looking at the evidentiary record as a whole and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not proffered sufficient evidence from which a rational fact finder could infer that Defendant's stated reason for his layoff was pretext and its true reason was racial discrimination. Thus, Defendant is entitled to summary judgment under Rule 56, Fed. R. Civ. P.

### Conclusion

For the reasons stated, I recommend that the District Court GRANT Defendant's Motion for Summary Judgment (Document No. 18) as to all claims in Plaintiff's Complaint and enter Final Judgment in favor of Defendant. Any objection to this Report and Recommendation must be

specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 23, 2005

The recommendation is hereby accepted.

/s/ Ernest C. Torres
Ernest C. Torres
Chief, US District Judge
Date: 2/6/06

-14-